FLOYD A. GUDANOWSKI & others[1] vs. TOWN OF
NORTHBRIDGE & others[2]
(and a companion case[3]).

Worcester. December 9, 1983. — January 23, 1984.

Present: ARMSTRONG, GREANEY, & KASS, JJ.

*Practice, Civil,* Relief in the nature of certiorari, Declaratory relief. *Taxation,* Sewer assessment. *County,* Commissioners.

A provision in G. L. c. 80, § 10, that decisions by county commissioners on taxpayers' applications for abatement of betterment assessments "shall be final" did not preclude judicial review of such decisions in a civil action for relief in the nature of certiorari. [416-420]

Taxpayers aggrieved by a town's betterment assessment for installation of sewers were not entitled to a declaratory judgment as to the validity of the assessment where it appeared that the assessment had been committed to the town's tax collector for collection and where the taxpayers had not exhausted the administrative remedies provided by G. L. c. 80. [420-421]

CIVIL ACTIONS commenced in the Superior Court Department on June 7, 1982.

The cases were heard by *Meyer, J.,* on motions to dismiss.

*Henry J. Lane,* Town Counsel, for the town of Northbridge.

*James F. Bergin* for the taxpayers.

GREANEY, J.  After unsuccessfully seeking abatement of betterment assessments for the installation of sewers, the plaintiffs, landowners in the town of Northbridge, filed two

---

[1] Mary J. Gudanowski, Thayer N. Oosterman, Joan K. Oosterman and Bernard Van Spyker.

[2] The commissioners of Worcester County.

[3] Roland R. Graves & others *vs.* Town of Northbridge & others.

actions in the Superior Court against the town and the county commissioners collectively seeking: (1) review of decisions by the county commissioners which denied their several applications for abatement of the taxes levied on the assessments, and (2) a declaration that the assessments were invalid. The defendants moved pursuant to Mass.R.Civ.P. 12(b)(1) and (6), 365 Mass. 755 (1974), to dismiss the complaints on the basis of lack of jurisdiction and the failure of the complaints to state a claim. The motions to dismiss were allowed. Two motions to amend the complaints filed by the plaintiffs after the entry of the orders of dismissal were denied. The plaintiffs have appealed from judgments of dismissal and from the orders denying the amendments. We hold in part 1 that it was error to dismiss the actions against the commissioners because their decisions are reviewable by an action in the nature of certiorari. The request for a declaration that the assessments were invalid requires separate comment in part 2.

The record contains the complaints, the motions to dismiss and the proposed amended complaints. The complaints allege that in March, 1968, after obtaining the necessary authorization and appropriation, the town entered into contracts for the construction of sewers in various streets including those adjacent to the plaintiffs' land. This construction project was completed by 1972. However, the board of sewer commissioners of the town did not record in the registry of deeds its plans showing estimated betterment assessments to the plaintiffs until 1978. At that time, the sewer commissioners submitted the estimated assessments to the board of assessors, which committed them to the collector of taxes, who billed the plaintiffs on January 8, 1980. The complaints further allege that the plaintiffs, on July 1, 1980, filed applications with the board of assessors for abatement of the assessments, asserting that they had not been made in accordance with law. The town took no action on these applications for a period exceeding four months, resulting in their constructive denial. See G. L. c. 80, § 10A. In December, 1980, the plaintiffs appealed to the county commissioners from the denial of the abatement applications

pursuant to the procedure in G. L. c. 80, § 10, as appearing in St. 1933, c. 147, which authorizes the commissioners to review applications for abatement and makes their decisions "final." The appeals were heard and denied by the county commissioners.

The present actions were commenced in the Superior Court in June, 1982, seeking review of the commissioners' decisions and a declaration that the assessments were invalid. The town promptly moved to dismiss the actions, arguing that there was no right of appeal or review in the circumstances. Those motions were allowed in August, 1982, and similar motions filed by the county commissioners were allowed in November, 1982.

Subsequent to the granting of the motions to dismiss, the plaintiffs filed two motions to amend the complaints. The first proposed amendment alleged that the assessments were invalid due to the town's failures to record an order, a plan and an estimate, and to assess the cost of the improvements, within the respective time periods set forth in G. L. c. 80, §§ 1 and 2. The second proposed amendment alleged that the assessments were void because the town failed to record "forthwith" in the registry of deeds a "statement of their action," as required by G. L. c. 83, § 27. The motions to amend were denied. Judgments dismissing the complaints as to all defendants were thereafter entered.

1. We first consider the plaintiffs' actions insofar as they are against the county commissioners. Those actions, as we read them, are in the nature of certiorari to test the commissioners' decisions denying the applications for abatements for errors of law.

There are alternative methods set forth in G. L. c. 80 by which an aggrieved person can appeal from a municipality's failure to abate a betterment assessment.[4] The first method

---

[4] General Laws c. 80 applies to the assessment of betterments in general, while G. L. c. 83, §§ 14-24, address sewer assessments. However, pursuant to § 28 of c. 83, "[t]he provisions of chapter eighty relative to the apportionment, division, reassessment, *abatement* and collection of assessments, and to interest, shall apply to assessments made under this chapter" (emphasis supplied).

of appeal is provided by G. L. c. 80, § 7, which states, in pertinent part, that "[a] person who is aggrieved by the refusal of [a local] board to abate an assessment in whole or in part may . . . appeal therefrom by filing a petition for the abatement of such assessment in the Superior Court." Section 10 of c. 80 provides a second method of appeal from the denial of a requested abatement. It states in relevant part that "[a] person who is aggrieved by the refusal of a board . . . to abate an assessment may, instead of pursuing the remedy provided by section seven, appeal within the time limited therein to the county commissioners of the county in which the land assessed is situated . . . . *The decision of the county commissioners shall be final*" (emphasis supplied). The judge below apparently concluded that the emphasized language divested the Superior Court of all jurisdiction to review the commissioners' decisions. We must inquire, therefore, whether § 10 is intended to preclude all judicial review when an appeal is pursued under that statute rather than under § 7.

It has been recognized that "[a]part from review under the State Administrative Procedure Act (G. L. c. 30A) . . . certiorari is the only way of reviewing decisions declared final by statute." *MacKenzie* v. *School Comm. of Ipswich,* 342 Mass. 612, 614 (1961). It has also been recognized that "certiorari lies notwithstanding provisions barring appeal by *any* party" (emphasis original). *Natick* v. *Massachusetts Dept. of Pub. Welfare,* 341 Mass. 618, 620 (1961). Consistent with these established principles, and the salutary purpose of certiorari — "to relieve aggrieved parties from the injustice arising from errors of law committed in proceedings affecting their justiciable rights when no other means of relief are open," *Swan* v. *Superior Court,* 222 Mass. 542, 544 (1916) — review by means of certiorari has been permitted in a variety of situations declared by statute to be either final or unreviewable. See, e.g., *Swan* v. *Superior Court,* 222 Mass. at 543-544; *McLaughlin* v. *Mayor of Cambridge,* 253 Mass. 193, 199-200 (1925); *Whitney* v. *District Court of No. Berkshire,* 271 Mass. 448, 458-459 (1930);

*Hough* v. *Contributory Retirement Appeal Board,* 309 Mass. 534, 535 (1941), and the *Natick* and *MacKenzie* decisions cited above.

It is also of some significance that certiorari has been used to review decisions analogous to those complained about here. For example, certiorari has been held to lie to quash the proceedings of county commissioners where costs have been incorrectly awarded pursuant to an application for abatement, *Lowell* v. *County Commrs. of Middlesex,* 6 Allen 131, 132 (1863), and to quash sewer assessments which were alleged to be invalid, *Bowditch* v. *Boston,* 168 Mass. 239, 241 (1897). There is nothing in the history of § 10 which indicates that the Legislature intended to foreclose all review of the commissioners' action on abatement appeals.[5] And although little has been written about the statute, we note that one respected commentator in the field subscribes to the view that "[t]he provision that the decision of the county commissioners shall be final does not of course preclude the taking of questions of law apparent on the record to the [Superior Court] on petition for writ of certiorari." Nichols, Taxation in Massachusetts 793 (3d ed. 1938).

Moreover, the "requisite elements for [the] availability of certiorari . . . (1) a judicial or quasi judicial proceeding; (2) a lack of all other reasonably adequate remedies; and (3) a substantial injury or injustice arising from the proceeding under review," *Boston Edison Co.* v. *Selectmen of Concord,*

---

[5] Section 10 was originally inserted in 1878 and stated at that time that any person aggrieved by the failure to obtain an abatement could "apply to the county commissioners for a revision thereof." St. 1878, c. 184, § 2. It was not, however, until 1918 that a final sentence was added which stated that "[t]he decision of the county commissioners shall be final." St. 1918, c. 257, § 219, subsection 9. This revision of § 10 was part of a wide revision and recodification of existing law which included many substantive changes. The preliminary report of the commissioners appointed pursuant to c. 43 of the Resolves of 1916 to make consolidations and changes stated merely that the provision allowing an appeal to the county commissioners was left in because it provided a more convenient remedy in certain parts of the State than an appeal to the Superior Court. The balance of the legislative history of § 10 is of no help to the resolution of the question before us.

355 Mass. 79, 83 (1968), are all present here. There can be little doubt that county commissioners deciding whether a tax abatement should be granted are performing an adjudicatory function rather than discharging their legislative, executive, or administrative duties. See *Bowditch* v. *Boston*, 168 Mass. at 240. Compare *Stacy* v. *Mayor of Haverhill*, 316 Mass. 759 (1944); *Clark* v. *City Council of Waltham*, 328 Mass. 40 (1951). There are no alternative remedies available to these plaintiffs to test the propriety of the commissioners' decisions.[6] It is self-evident that the commissioners' decisions, if affected by substantial error of law, will cause injustice if allowed to stand, a circumstance which would "be a grave reproach to any system of jurisprudence." *Swan* v. *Superior Court*, 222 Mass. at 544. Finally, the plaintiffs' requests for relief in the nature of certiorari were timely brought.[7] We can see no valid reason to deprive parties proceeding under § 10 of the remedy of certiorari if it can be shown that there are substantial errors of law apparent on the record which affect their substantial rights. We conclude that the reference to the commissioners' decision being "final" in the last sentence of § 10 does

---

[6] There is nothing in the legislative history, see note 5, *supra*, which would indicate that the provision of an appeal by § 7 of c. 80 to the Superior Court was meant to preclude review of the commissioners' decision under § 10. Nor are we persuaded that the existence of the procedure in § 7 should be an election which bars the use of certiorari to examine a decision made pursuant to § 10 for substantial error of law. The key inquiry is whether, at the time the action in the nature of certiorari is brought, alternative remedies exist. Compare *Reidy* v. *Acting Director of Civil Service*, 354 Mass. 760 (1968). *Boston Edison Co.* v. *Selectmen of Concord*, 355 Mass. 79, 83 (1968). This is clearly the situation here since the time for appeal to the Superior Court under § 7 had expired when the plaintiffs filed their complaints.

[7] General Laws c. 249, § 4, as appearing in St. 1973, c. 1114, § 289, requires that an action in the nature of certiorari be brought within "two years next after the proceeding complained of." The actions here were brought approximately one month after the commissioners' decisions denying the abatements. We do not construe the words "proceeding complained of" as referring to the dates on which the assessments were made or the taxes billed, and, therefore, we reject the town's argument, based on the latter interpretation, that the actions are not timely.

not prevent review by means of certiorari of the proceedings before the commissioners to ascertain whether their decisions are sound in law. Accordingly, the plaintiffs' claims seeking such review must stand for further proceedings in the Superior Court.[8]

2. Those portions of the plaintiffs' original complaints seeking declaratory relief simply sought to have the assessments declared invalid without stating reasons to support such a declaration. The first proposed amendment to the complaints sought to sharpen their content by predicating invalidity on allegations that the town had failed to comply with the deadlines set forth in G. L. c. 80, §§ 1 and 2. The second proposed amendment asserted that the town's delay in establishing and charging for the betterments contravened G. L. c. 83, § 27, which provides that when sewer commissioners determine to construct and charge for a sewer in a public way for which assessments may be made they must "forthwith" record a "statement of their action."

Giving the first proposed amendment its due, we conclude, as matter of law, that the plaintiffs could not have prevailed on any request for a declaration that the assessments are void for failure of the town to comply with the procedures set forth in G. L. c. 80, §§ 1 and 2. Those provisions do not apply to sewer assessments made under G. L. c. 83 because they are not provisions of c. 80 "relative to the apportionment, division, reassessment, abatement and collection of assessments." G. L. c. 83, § 28. As § 28 of c. 83 expressly points out, it is only the latter provisions of c. 80 that are made applicable to assessments made under c. 83. See *Crofts* v. *Assessors of No. Adams,* 261 Mass. 191, 203 (1927) (addressing the applicability of G. L. c. 80, § 2).

---

[8] Since the complaints were dismissed prior to an answer being filed by the county commissioners, it will be necessary, according to the usual procedure governing a certiorari action, to have the commissioners file an answer which will include the entire record of the proceedings before them and which will constitute, in effect, a return. The judge will decide the case on the basis of that answer, which brings before the court the record of the proceedings to be reviewed. See *Stetson* v. *Selectmen of Carlisle,* 369 Mass. 755, 758 (1976).

The plaintiffs' remaining request for a declaration (as contained in the second proposed amendment) that the assessments are invalid for failure of the town to comply with G. L. c. 83, § 27, is governed by the following passage from *Gallo* v. *Division of Water Pollution Control*, 374 Mass. 278, 287-288 (1978) (a sewer abatement case where a request for declaratory relief was dismissed): "[The taxpayers] may have been able to challenge the validity of the assessment in a suit for declaratory relief brought prior to the commitment of the assessment to the tax collector. See *California Village Corp.* v. *East Longmeadow*, 4 Mass. App. Ct. 128, 129-130 (1976); *Zambernardi* v. *Selectmen of Wilmington*, 2 Mass. App. Ct. 873 (1974). See also *East Chop Tennis Club* v. *Massachusetts Comm'n Against Discrimination*, 364 Mass. 444, 449-450 (1973). . . . However, it appears from the complaint that the assessment has been committed to the tax collector for collection. Therefore, [the taxpayers'] only avenue of relief lies with the administrative remedies provided by G. L. c. 80, by way of a petition for abatement filed with the board of selectmen (§§ 5, 6), with a right of appeal to either the Superior Court (§ 7) or to the county commissioners (§ 10). General Laws c. 80 sets out a comprehensive and uniform statutory scheme of administrative appeals and judicial review regarding assessments for sewers and other betterments. See *Lowell* v. *Lowell Bldg. Corp.*, 309 Mass. 165, 169-170 (1941); *Berriault* v. *Wareham Fire Dist.*, 360 Mass. 160, 168 n.10 (1971). In order to avoid frustrating the statutory scheme the administrative procedure must be exhausted before declaratory relief can be granted. *Assuncao's Case*, 372 Mass. 6, 8-9 (1977). *East Chop Tennis Club* v. *Massachusetts Comm'n Against Discrimination*, *supra* at 446-448. *Gordon* v. *Hardware Mut. Cas. Co.*, 361 Mass. 582, 584-586, 587 (1972). *Saint Luke's Hosp.* v. *Labor Relations Comm'n*, 320 Mass. 467, 469-470 (1946)" (footnote omitted). See also *Tobin* v. *Commissioner of Banks*, 377 Mass. 909-910 (1979) (dismissing a claim until administrative remedy exhausted).

It follows that even had the complaints been amended to seek a declaration that G. L. c. 83, § 27, had not been complied with, such relief would not have been proper.[9]

The orders denying the motions to amend the complaints are affirmed. The judgments are vacated, and the cases are to stand for further proceedings in the Superior Court on the certiorari aspect of the complaints consistent with this opinion. The appellants are to have the costs of appeal.

*So ordered.*

---

[9] The plaintiffs also make a vague claim that the complaints bespeak an action against the town for breach of contract based upon the town's making of invalid assessments. The only authority they cite on the point involves a different taxing scheme and does not appear to support the plaintiffs' contentions. See *Sears Roebuck and Co.* v. *Somerville*, 363 Mass. 756 (1973). In the absence of meaningful citation or argument to support their position, we do not consider the question any further.