Lu, John T., J.
INTRODUCTION
The plaintiff Salem Retirement Board (Salem Board), pursuant to G.L.c. 30A, appeals the Contrib-utoiy Retirement Appeal Board’s (Appeal Board) decision reversing the Division of Administrative Law Appeals’ (Division) affirmance of the Salem Board’s decision denying Claire Cole’s (Cole) application for accidental disability retirement benefits.
The Salem Board moves for judgment on the pleadings, and requests the court vacate the Appeal Board’s decision because Cole is not entitled to an award of benefits under G.L.c. 32, §7. Cole contends that the Appeal Board’s decision is supported by the evidence, and is legally and procedurally sound.
BACKGROUND
I. The Facts
In 1975 Cole began her employment as an Administrative Assistant in the City of Salem’s Department of Public Works and, a year later, she became a member of the contributory retirement system. Cole had a long history of medical conditions, including obesity, hypertension, borderline lipid abnormalities, asthma, migraine headaches, anxiety, depression, and hypothyroidism.
On the morning of March 22, 2000, Cily Engineer Stan Borenstein (Borenstein), Cole’s supervisor, called Cole into his office and told her that her position was being eliminated as of July 1, 2000, and that she should try to find other employment. Cole became teary and Borenstein agreed to her request to leave for the day. At 4:00 p.m. that afternoon, Cole developed severe retrosternal chest pain and went to the emergency room at Salem Hospital. The admitting physician, Andrew J. Kemper (Kemper), diagnosed Cole as suffering an acute myocardial infarction (commonly known as a heart attack), and Cole remained at the hospital until March 27, 2000. Kemper noted in his report that Cole had been in her usual state of health until she heard about her termination from Borenst-ein, and that her past medical history included “major work related stresses with her job in jeopardy after 25 years working at City Hall.”
On March 30, 2000, Cole’s doctor advised her that both he and Kemper recommended that she take twelve weeks to recuperate and then retire. That same day, Cole applied for accidental disability retirement benefits and did not return to her job.
II. Procedural History
Although the Salem Board approved Cole’s application, on December I, 2000, the Public Employee Retirement Administration Commission (Commission) reversed the decision and remanded the case to the Salem Board.[2] On reconsideration, the Salem Board again voted to approve the application. The Commission once again reversed the decision and remanded the case to the Salem Board requesting that the Salem Board make further findings of fact as to whether “the stress of Ms. Cole’s job or termination caused her physical injury (i.e., heart attack)" and “whether the stress of Ms. Cole’s job and the stress of her termination were not common to many jobs and constitute a personal injury which caused the member’s permanent disability, or that her supervisor’s actions amounted to intentional infliction of emotional harm, rather than being a bona fide personnel action.”[3]
On July 26, 2001, the Salem Board denied Cole’s application for accidental disability retirement benefits, based upon its findings that: (1) the stress of Ms. Cole’s job and the stress of her termination were common to many jobs and did not constitute a personal injury sustained which caused the member’s permanent disability; and, (2) Borenstein’s actions did not amount to intentional infliction of emotional harm, but, rather, constituted abona fide personnel action.[4]
Cole appealed the Salem Board’s decision to the Division. However, on May 31, 2002, the Division affirmed the Salem Board’s decision. Cole applied to the full Appeal Board, but the Appeal Board adopted the Division’s Findings of Fact and affirmed the Division’s affirmance of the Salem Board’s denial of benefits.
Cole filed a complaint for judicial review of the Appeal Board’s decision under G.L.c. 30A, §14, and moved this court for Judgment on the Pleadings. The Salem Board also moved for Judgment on the Pleadings. This Superior Court (Billings, J.) denied the Salem Board’s motion, allowed Cole’s motion in part, and remanded the case to the Appeal Board “for further findings as to whether or not the plaintiffs *153 heart attack was caused by stress attendant on her receiving news of the elimination other position, and whether or not the plaintiff is currently disabled due to physical, rather than purely psychological, causes.”
The Appeal Board remanded the case to the Division which ordered a Regional Medical Panel (Medical Panel) to respond to the questions posed by Judge Billings.[5] The Medical Panel answered the questions in the affirmative. After considering the answers given by the Medical Panel, the Division affirmed the Salem Board’s decision denying Cole’s claim for accidental disability retirement benefits.
Cole appealed to the Appeal Board, and on November 22, 2006, the Appeal Board added two Findings of Fact to the forty-nine it incorporated from the Division’s decision: (1) Cole’s “heart attack was caused by stress attendant on her receiving news of the elimination of her position”; and (2) Cole “was disabled at that time due to physical rather than purely psychological causes.” The Appeal Board also made two rulings of law: (1) Cole’s “communications [with Borenstein] with respect to her employment were made in the course of her employment”; and (2) Cole’s “heart attack, which was caused by stress attendant on her receiving news of the elimination of her position, was as a result of her employment within the meaning of Chapter 32, §7.” The Appeal Board reversed the Division’s decision, and held that Cole was entitled to accidental disability retirement benefits under G.L.c. 32, §7.
DISCUSSION
Standard of Review
A reviewing court may set aside an administrative decision if it finds that the substantial rights of a party may have been prejudiced because the decision is defective under G.L.c. 30, §14(7). The party appealing an administrative decision bears the burden of demonstrating the decision’s invalidity. Merisme v. Board of Appeals on Motor Vehicle Liab. Policies & Bds., 27 Mass.App.Ct. 470, 474 (1989).
A court’s review of an agency decision is confined to the administrative record. G.L.c. 30A, §14(5). The reviewing court is required to give due weight to the agency’s experience, technical competence, specialized knowledge, and the discretionary authority conferred upon it by statute. Town of Hingham v. Department of Telecomm. & Energy, 433 Mass. 198, 201 (2001); Flint v. Commissioner of Pub. Welfare, 412 Mass. 416, 420 (1992); Seagram Distillers Co. v. Alcoholic Beverages Control Comm’n, 401 Mass. 713, 721 (1988); Evans v. Contributory Ret. Appeal Bd., 46 Mass.App.Ct. 229, 233 (1999); Hotchkiss v. State Racing Comm’n, 45 Mass.App.Ct. 684, 695-96 (1998). The reviewing court may not substitute its judgment for that of the agency. Flemings v. Contributory Ret Appeal Bd., 431 Mass. 374, 375 (2000); Southern Worcester County Reg’l Vocational Sch. Dist v. Labor Relations Comm’n, 386 Mass. 414, 420-21 (1982), citing Olde Towne Liquor Store, Inc. v. Alcoholic Beverages Control Comm’n, 372 Mass. 152, 154 (1977).
Unless the administrative decision is unsupported by substantial evidence, it will be allowed to stand. Dohoney v. Director of Div. of Employment Sec., 377 Mass. 333, 337 (1979). The findings and decision of the agency “are to be sustained wherever possible” and “are not to be reversed unless they are wholly lacking in evidentiary support or are tainted by errors of law.” Woolfall’s Case, 13 Mass.App.Ct. 1070, 1070 (1982) (internal citations omitted). A court may not dispute an administrative agency’s choice between two conflicting views, even though the court would justifiably have made a different choice had the matter come before it de novo. Seagram Distillers Co. v. Alcoholic Beverages Control Comm’n, 401 Mass. at 721; Zoning Bd. of Appeals of Wellesley v. Housing Appeals Comm’n, 385 Mass. 651, 657 (1982). That the reviewing court may disagree, on the merits, with the agency’s findings is not grounds for reversal.
Analysis
The Salem Board argues that the Appeal Board’s decision is tainted by errors of law because: (1) Cole did not suffer a personal injury under G.L.c. 32, §7( 1); and, (2) Cole has not established the causal relationship required under G.L.c. 32, §7(1).
I. Personal Injuiy
G.L.c. 32, §7(1) provides an award of benefits to one “who is unable to perform the essential duties of her job” due to “a personal injuiy sustained or a hazard undergone as a result of, and while in the performance of, (her) duties at some definite place and at some definite time,” and whose inability to perform is “likely to be permanent.” Because chapter 32 is silent on the definition of “personal injuiy,” courts have turned to the Workers’ Compensation Statute, G.L.c. 152, §26, for guidance. Barrufaldi v. Contributory Ret. Appeal Bd., 337 Mass. 495, 500-01 (1958); Sugrue v. Contributory Ret. Appeal Bd., 45 Mass.App.Ct. 1, 4 n.4 (1998), and cases cited. Although a “personal injury” includes a disability which “stem[s] from a single work-related event or series of events,” it does not include “mental or emotional disability arising principally out of a bona fide, personnel action including a . . . termination.” Blanchette v. Contributory Ret. Appeal Bd., 20 Mass.App.Ct. 479, 485 (1985); G.L.c. 152, §1 (7A);[6] contrast with Lavin v. Auto Parts Warehouse, 10 Mass. Workers’ Comp. Rep. 745, 748 (1999) (physically incapacitating headaches resulting from stressful events at work could not be the basis for denial of benefits under G.L.c. 152, §1(7A) because “bona fide personal actions are not part of the analysis in claims of physical disability”).
Judge Billings noted the distinction between emotional and mental disabilities and physical disabilities:
Only a “mental or emotional disability” arising principally out of a “bona fide, personnel action” is *154 excluded from the definition of “personal injury” in c. 152, §1(7A). The statute thus invites attention to the nature of the disability, not its cause. Although the legislature certainly could have excluded physical disabilities resulting from psychological causes, or from physical injuries which themselves were brought on by stress or other emotional or psychiatric causes, the language of the statute seems carefully chosen: to be excluded from the definition of “personal injury,” it is the disability itself that must be mental or emotional in nature, not the etiology.
Memorandum and Order on Cross Motions for Judgment on the Pleadings at 10 (Billings, J.) (emphasis added).
There is substantial evidence in the record to support the Appeal Board’s determination that although the cause of Cole’s disability, extreme stress, was psychological, the nature of her disability, her cardiac condition, was physical rather than psychological. Dohoney, 377 Mass. at 337. The emergency room doctor’s report said that Cole had been in her usual state of health until that morning when she had learned of her impending termination. Ex. 8 in the Administrative Record (AR) at 213. The Medical Panel stated that in its collective opinion, Cole’s heart attack was caused by the stress she experienced upon receiving news of the elimination of her position, and that as a result of the heart attack, Cole became physically, and likely permanently, disabled. Ex. 4, AR at 227. Although Cole’s heart attack was caused by stress, her disability was the acute myocardial infarction. As Judge Billings stated, “a heart attack is unquestionably a physical, not a psychological, injury” resulting in physical damages such as “damage to the cardiac muscle,” or “resultant cardiopulmonary insufficiency.”
The Appeal Board committed no error of law when it concluded that because Cole’s heart attack stemmed from news of her impending termination, and because her disability was physical in nature, the bona fide personnel exception did not apply, and Cole suffered a “personal injury” under G.L.c. 32, §7(1).
II. Causation Requirement
“The final determination... whether causation was proved [is] reserved to [the Appeal Board], based on the facts found and all the underlying evidence, including both the medical and non-medical facts.” Lisbon v. Contributory Ret. Appeal Bd., 41 Mass.App.Ct. 246, 254 (1996). Under G.L.c. 32, §7(1), a plaintiff is required to show that her disability arose “as a result of, and while in the performance of, [her] duties at some definite place and at some definite time.” Although G.L.c. 32, §7(1) borrows the definition of “personal injury” from G.L.c. 152, §26, the causal nexus between a disabling injury and a claimant’s employment duties under G.L.c. 32, §7(1) is more restrictive than that required under G.L.c. 152, §26. Namvar v. Contributory Ret. Appeal Bd., 422 Mass. 1004, 1004-05 (1996). A plaintiff may not claim G.L.c. 32 benefits if her disability is caused by other factors outside the workplace. See id. (employee who was injured when she slipped and fell on her employer’s premises while returning to her office from lunch did not qualify for disability retirement benefits under the statute as the injury did not occur as a result of, and while in the performance of, her duties); see also Richard v. Contributory Ret Appeal Bd., 431 Mass. 163, 164 (2000) (employee who was injured in an automobile accident while driving from her home to her first school assignment of the workday did not qualify for benefits under the strict causation requirement).
There is substantial evidence in the administrative record to support the Appeal Board’s findings and its conclusion that Cole established the causal connection between her employment and her disability. Dohoney, 377 Mass. at 337. Cole received news of her impending termination during the morning of March 22, 2000 while she was in the performance of her duties at work. AR at 359. On that same day, when she was being treated for her heart attack, Cole told Kemper that she had been in her usual state of health until she heard about her termination from Borenst-ein. Id. The Medical Panel concluded that Cole’s heart attack was caused by stress receiving news of the elimination of her job. AR at 22-23. The Appeal Board committed no error of law by ruling that Cole’s disability arose “as a result of, and while in the performance of, [her] duties at some definite place and at some definite time,” and not as a result of factors outside the workplace.
ORDER
The plaintiff Salem Retirement Board’s Motion for Judgment on the Pleadings is DENIED, and the defendant Contributoiy Appeal Retirement Board’s decision is AFFIRMED. Judgment shall enter for the defendant Contributoiy Retirement Appeal Board.

A copy of the letter does not appear in the Administrative Record however see Salem Board’s Prehearing Memorandum at 3.

A copy of the Commission’s remand and request for further hearings is not in the Administrative Record. However, see Salem Board’s Prehearing Memorandum at 3-4.

Cole’s termination was a bona fide personnel action. On August 11, 1998, Borenstein notified Cole that she had been using excessive sick time, and placed her on probationary sick leave. Borenstein was additionally concerned about Cole’s lack of productivity, and that her co-worker — and later her boss — Linda White (White) could potentially perform Cole’s work in addition to her own. In late 1999 or early 2000 Borenstein warned Cole that the Mayor was considering the elimination of Cole’s position in the next budget and to change her work habits if she wanted to keep her job.

Cole passed away on December 19, 2003.

In its definition of personal injury, the Workers’ Compensation Statute states:
*155 ... No mental or emotional disability arising principally out of a bona fide, personnel action including a transfer, promotion, demotion, or termination except such action which is the intentional infliction of emotional harm shall be deemed to be a personal injury within the meaning of this chapter.
G.L.c. 152, §1(7A).